UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | |
|---|---|
| In re | **Chapter 7** |
| POSEIDON POOL & SPA RECREATIONAL, INC., | **Case No. 805-87603-478** <br> **Judge Dorothy Eisenberg** |
| Debtor. | |

-----------------------------------------------------------------X

| | |
|---|---|
| ANDREW M. THALER, Trustee, <br> Estate of POSEIDON POOL & SPA <br> RECREATIONAL, INC., | **Adversary Proceeding** <br> **No. 806-8222-478** |
| Plaintiff, | |
| - against - | |
| ESTATE OF VINCENT J. ARBORE, Deceased, <br> DIANE ARBORE, in her capacity as Executrix <br> of the Estate of Vincent J. Arbore, DIANE <br> ARBORE, ANN ARBORE, PETER ARBORE, <br> JAYVIN ARBORE, ALLISON ARBORE, <br> MICHAEL ARBORE, KATHERINE ARBORE, <br> ALAN ARBORE, JAMES ARBORE, ROSA <br> DINICOLO and RITA CANNILLO, | |
| Defendants. | |

-----------------------------------------------------------------X

**ARBORE DEFENDANTS' MEMORANDUM IN
OPPOSITION TO TRUSTEE'S MOTION TO
DISMISS THEIR COUNTERCLAIMS TO HIS
<u>ABOVE-CAPTIONED ADVERSARY PROCEEDING</u>**

**<u>PRELIMINARY STATEMENT</u>**

This Memorandum of Law is submitted on behalf of the Arbore defendants (the

"Defendants"), by their counsel, Jaspan Schlesinger Hoffman LLP ("JSH"), in opposition to the

Chapter 7 Trustee's (the "Trustee") motion to dismiss Defendants' counterclaims propounded

against the Trustee in the latter's above-captioned adversary proceeding.

In particular, this memorandum of law is being submitted to the Court in accordance with its directions made at a hearing on May 15, 2008 following a series of cross letters to the Court by the Defendants and the Trustee.

## A

## ISSUE INVOLVED

As a rejoinder, <u>inter alia</u>, to the Trustee's Second Amended Complaint, Defendants filed four (4) counterclaims against the Trustee based, in part, upon certain contractual indemnification provisions in a redemption of corporate stock agreement (the "Agreement") and note (the "Note"), <u>inter alia,</u> entered into on May 24, 2002 between Defendant Vincent J. Arbore and (now the Estate of Vincent J. Arbore ("Defendant Estate"), and the present Chapter 7 debtor (the "Debtor") or ("Poseidon").

The indemnification provisions of the Agreement and Note, particularly, paragraph "5" of the Note, entitled "expenses", requires the Debtor

> "to pay all costs and collection, including attorneys fees…hereof incurred by the holder hereof [Defendant Vincent J. Arbore]…on account of such collection [in connection with the protection or realization of the collateral securing the Note] [and which is to include]…all costs, expenses and attorneys fees…in connection with any <u>insolvency</u>, <u>bankruptcy</u>…proceeding which materially and adversely affects the exercise by the holder…of its rights and remedies under this Note…"(emphasis supplied).

Since the Trustee's adversary complaint clearly both materially and adversely affects the exercise, <u>inter alia</u>, by the Defendant Estate, of its rights and remedies under the Note, since the effect of the Trustee's complaint, which alleges the avoidance of the Agreement and Note and payments made thereunder which the Defendant Estate maintains is proper as a fraudulent conveyance, and/or nullification, by reason of the provisions of New York Business Corporation Law ("BCL") Section 513(a), the Arbore Defendants are entitled to their attorneys fees incurred

in defending such adversary complaint in this bankruptcy case under State and Federal statutory and decisional law.

The Trustee, without any authoritative support, in statutory or decisional law, attempts to bluff this Court into believing that since the Debtor arguably was insolvent, at the time it filed its Chapter 11 case, the Redemption Agreement, Note and other operative documents thereunder, are unenforceable by virtue of the provisions of BCL §513(a) which do not, <u>inter</u> <u>alia</u>, permit a corporation's redemption of its stock while insolvent or where there is no corporate surplus and the redemption would render the Debtor insolvent.

The Trustee, in his letter to the Court, dated April 10, 2008 critically concedes that "the issue as to whether any or all of the payments [under the Note] <u>made</u> <u>before</u> <u>the</u> <u>filing</u> are recoverable is not at issue in [the Trustee's] motion to dismiss". (<u>Id.</u> at p. 3). (emphasis supplied). Further, the Trustee admits of no such payments, post-petition.

In short, the sole basis for the Trustee's motion to dismiss Defendants' counterclaims is that, in some manner, the alleged insolvency of the Debtor, at the time of the filing, as a matter of law, <u>ipso</u> <u>facto</u> renders the Agreement, Note and the other operative documents, executed on May 24, 2002, void and unenforceable, including, the Trustee argues, the provisions of indemnification of attorneys fees as set forth in the Agreement and Note.

As the Defendants make clear, <u>infra</u>, the Trustee's contentions are unswervingly and embarrassingly unsubstantiated.

## **B**

## **THE DEFENDANTS' COUNTERCLAIMS**

Defendants' first and second counterclaims seek a judgment indemnifying them, as a set-off against any and all damages occasioned by the Debtor, including attorneys fees, suffered by

Defendants in the State Court action commenced by Textron Financial Corp. ("Textron") against the Debtor, its managers and officers and the Estate of Vincent J. Arbore and Defendant Ann Arbore.

The gravamen of the Textron's State Court Complaint, against the Defendant Arbores, was that they, along with their co-defendants, the Poseidon defendants, executed a document entitled "Guaranty", whereby purportedly all of these State Court Defendants personally and unconditionally guaranteed Poseidon's obligations to Textron.

The record indisputably revealed, however, that Joseph Gartner, one of the Poseidon Defendants, falsely "witnessed" the signatures inter alia, of the Arbore Defendants, to the Guaranty, whose signatures, in fact, were forged by Joseph Gartner of Poseidon.

Consequently, Textron settled with Defendant Christine Greco and the Arbore Defendants, which culminated in an order of the State Court, dated September 25, 2006, which discontinued the action, with prejudice, (the action against the "Debtor", of course, had been stayed). This stipulation contained a provision that fees or costs would not be assessed by either Textron or by Christine Greco and the Arbore Defendants against one another.

The Trustee now claims that by reason of such stipulation, the Arbore Defendants cannot seek, in its first two counterclaims, attorneys fees against the Trustee qua Debtor. But, as noted by the New York Court of Appeals in McDermott v. City of New York, 50 N.Y.2d 211, 220 (1980), "should the party seeking indemnity negotiate a settlement, this in itself would have no consequences upon the indemnity claim. Irrespective of the amount of the settlement, the indemnitor is either totally responsible or not." See also U.S. Fire, Ins. Co. v. Fed. Ins. Co., 858 F.2d 882, 887 (2d Cir. 1988) and American Home Assurance Co. v. Hapag Lloyd Container Linie, 385 F.Supp.2d 316, 321, N. 25 (S.D.N.Y. 2005) quoting McDermott, Supra 216-217

"Indemnity rests upon the principle that the <u>true wrongdoers</u> should bear the ultimate burden of payment". (emphasis supplied)

It cannot responsibly be argued otherwise that, the only reason the Arbore Defendants were sued by Textron, was because agents of the Debtor falsely witnessed the Arbore Defendants' signatures on the Guaranty and that those signatures were forged by such agents. The fact that the Arbores settled with Textron, at no out-of-pocket expense due from them to Textron, does not absolve the Debtor to reimburse the Arbores, for their needless costs and attorneys' fees, as a set-off.

In particular, the Third and Fourth Counterclaims seek indemnification of Defendants' costs and expenses, including attorneys' fees, in this instant bankruptcy adversary proceeding, incurred in seeking to protect its realization upon the collateral securing the Note and Guaranty. Clearly, under Section 5 of the Note, such indemnification, by its terms, applies to the Trustee's adversary proceeding. The unavoidable goal of such avoidance action, by the Trustee is to materially and adversely affect any and all rights laboriously obtained by the Estate Defendant, as a <u>quid pro quo</u>, for discontinuing its meritorious state action against Poseidon as memorialized in an order of the State Court.

<u>C</u>

**TRUSTEE'S MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIMS
IS GROUNDLESS AS A MATTER
<u>OF FACT AND LAW</u>**

<u>(a)</u>

The Trustee's motion to dismiss, seemingly, raises as a bar to the relief sought by Defendants' counterclaims, the unsustainable claim that, by reason of the so called existential "fact" that the Debtor was insolvent, at the time of the Chapter 11 filing, on October 7, 2005,

grounded solely upon its filed schedules, and 2005 tax returns, the Redemption Agreement and Note are unenforceable, by reason of BCL Section 513(a).

In relevant part, that section provides that

> "…the shares of a corporation may not be purchased by the corporation, or if redeemable…may not be <u>redeemed</u>…for or into cash, other property, indebtedness or other securities of the corporation…if the corporation is then insolvent or would thereby be made insolvent, shares may be purchased or redeemed only out of surplus." (emphasis supplied)

The Trustee, therefrom, in a quantum leap, from acceptable logic, concludes that since the Debtor was allegedly insolvent on October 7, 2005[1] the Redemption Agreement of May 24, 2002 and the Note as security therefore under the BCL, are unenforceable. Thus, claims the Trustee the indemnification provisions in those documents are void.

Indeed, whether the transfer was made in a preference action under Bankruptcy Code §547, or constructive fraudulent conveyance action under Bankruptcy Code §548, the insolvency of the Debtor is calculated, as of the time of the transfer. <u>See</u> <u>e.g.</u> <u>In</u> <u>re</u> <u>Strickland</u>, 230 B.R. 276, 281 (Bankr. E.D. Va. 1999) ("…however, the fact that the Debtor's liabilities far exceeded his assets at the date of filing does not necessarily translate into a finding that this was the case at the time of the alleged preference" [footnote omitted])

Similarly, with respect to BCL §513(a) the Debtor may not <u>purchase</u> or <u>redeem</u> its stock at the time it is insolvent or may, thereby, be rendered, insolvent.

The Redemption Agreement here provided, <u>inter alia</u>, that for the redemption of Vincent Arbore's ten (10) shares of Poseidon stock, Poseidon would pay him $450,000; $50,000 at the

---

[1] A presumption of insolvency is applicable only to preference actions of which this is not. Of course, such presumption attaches only to "90 days immediately preceding the date of the filing of the petition". 11 U.S.C. §547(f). <u>See</u> also the Trustee's previously cited case, <u>In</u> <u>re</u> <u>Blue Point Carpet Inc</u>., 102 B.R. 311, 320 (Bank. E.D.N.Y. 1989) ("Summary Judgment is available only for the three months during which the Trustee [in his preference action] has the benefit of the presumption of insolvency.")

closing, a promissory note, which was in the amount of $400,000 plus interest to be paid in equal installments of $6,500 on the 24th day of each month commencing June 24, 2002 until May 24, 2007, plus Arbore's unpaid salary and reimbursement to Arbore for repairs to Poseidon's former principal location, in the amount of $7,500.

**(b)**

With respect to BCL §513(a), New York has opted for the "Installment Test" which "applies the capital surplus requirement <u>each time a payment under the Note is made</u>". Dunne, "stock Repurchase Agreements in Bankruptcy: A tale of State Law Rights Discarded", 12 Bankr. Dev. J. 335, 358-9 (1996) (emphasis supplied).

Accordingly, in like manner, as the preference and fraudulent conveyance statutes require, BCL §513(a) looks only to the <u>time of the particular redemption installment payment</u> (i.e. transfer) to ascertain whether the corporation, for purposes of BCL §513(a), was solvent. It necessarily follows that where, as here, there is no claim that any installment payment, under the Note, was made at the time of Debtor's filing, or thereafter, what is the significance of the Debtor's insolvency at filing, vis-à-vis BCL §513(a)? Of course the answer is simplicity itself – none!

Indeed, there is significant authority to the effect that "[t]he failure of a business, even a monumental failure, does not alone prove the insolvency of the business in the months and years prior to its demise". <u>In re Iridium Operating LLC</u>, 373 B.R. 283, 345 (Bankr. S.D.N.Y. 2007) (cases cited, but omitted). Of course, here the Trustee has forsworn, at least for purposes of the instant motion, as noted earlier, in his April 10, 2008 letter to the Court that "[t]he issue as to whether any or all of the payments <u>made before the filing is not at issue in the Motion to Dismiss</u>…" (emphasis supplied)

Since the Trustee admits that no stock redemption installment payments were made when the Debtor filed, how can he possibly claim that, even if the Debtor were insolvent, on the filing date, such insolvency could, without any redemption payment made while insolvent, infect the Agreement and Note, thus triggering the provisions of BCL §513(a).[2] This is hardly a new concept; thus, for example, in In re Fechheimer Fishel Co., 212 F.357, 365 (2d Cir. 1914) the Court observed that "…the right of the vendor of the stock to receive payment on the Notes given him by the corporation for his stock was not conclusively established by the fact that the corporation was solvent when the purchase was made. His right turned on the condition of the assets at the time payment was to be made and he could only be paid out of the surplus if any there should be". (emphasis supplied).[3] Contrast with In re Dino & Artie's Automotive Transmission Co., 68 B.R. 264, 268 (Bankr. S.D.N.Y. 1986) where the debtor corporation was insolvent before any payment was made to the deceased shareholder so that any payment thereunder or thereafter would violate BCL §513(a).

Since the Trustee, by his own admission, for purposes of his motion to dismiss the Arbore Defendants' counterclaims, is not seeking to avoid, under BCL §513(a), any payment, pre-petition, made to the Arbore Estate, under the Agreement and Note and admits of no post-petition payment, thereunder, there can be no legal significance to his apparent contentment with his sole claim that the Debtor was insolvent at the time of its filing.

Indeed, the Trustee, in his own words, agrees with this analysis. In his Supplemental Affirmation in Support of Plaintiff's Motion to Dismiss Counterclaims, he avers that "Again, the

---

[2] Indeed, courts have "held that evidence of insolvency on a date significantly distant in time from the date of the transfer, without more evidence, is insufficient to support a finding of insolvency on the date of the transfer". In re Washington Bancorporation, 180 B.L. 330, 333 (Bankr. D.C. 1995) (cases omitted).
[3] As noted in In re Strickland, supra at 283-4 "…the Debtor's schedules are not persuasive, dispositive or controlling on the question of the Debtor's insolvency at the time of the alleged preference; …" [i.e. "transfer" – Bankruptcy Code §101(54)(D)].

Debtor is simply seeking to <u>recover</u> <u>payments</u> <u>made</u> for redemption of stock <u>at</u> <u>a</u> <u>time</u> <u>that</u> <u>the</u> <u>Debtor</u> <u>was</u> <u>insolvent</u>, which is prohibited by N.Y. Bus. Corp. Law §513". (Par. 35, p. 13) (emphasis supplied).

**THE INDEMNIFICATION PROVISIONS
OF THE AGREEMENT AND NOTE ARE ALIVE
AND WELL AND UNDER THE TRAVELERS
CASE ENFORCEABLE AGAINST THE
<u>TRUSTEE IN THIS BANKRUPTCY CASE</u>**

Since it is clear that insolvency of the Debtor at the time of filing, by itself, is legally inconsequential, under the circumstances present here, there can be no candid claim that the indemnification provisions of the May 24, 2002 Agreement and Note are unenforceable.[4]

As noted in <u>American Home Assurance Company v. Hapag Lloyd Container Linie</u>, 385 F.Supp.2d 316, 322 (S.D.N.Y. 2005). <u>Supra</u>, " ' Indemnity obligations, whether imposed by contract or by law, require the indemnitor to hold [the indemnitee] harmless from costs in connection with a particular class of claims'. Legal fees and expenses incurred in defending the original claims are such costs and thus 'fall squarely within the obligation to indemnify'." (Citing <u>Peter Fabrics, Inc. v. S.S. Hermes</u>, 765 F.2d 306, 316 (2d Cir. 1985).

As noted much earlier, in this memorandum, paragraph "5" of the Note, involved here, the Debtor, now the Trustee, is required to pay

> "all costs…including reasonable attorneys' fees…in connection
> with the protection as realization of the collateral securing this
> Note…such costs and expenses will include all costs, expenses,
> and reasonable attorneys' fees incurred by the holder [Arbore
> Estate] hereof in connection with any <u>insolvency</u>,
> <u>bankruptcy</u>…involving the undersigned [the Debtor]…which in
> any way materially and adversely affects the exercise by the holder

---

[4] To be sure, even if the Agreement and Note, with respect to one or more pre-petition payments were unenforceable, because the payment(s) were made while the Debtor was insolvent, the indemnification provisions would survive since, indisputably BCL §513(a) is <u>solely</u> directed at the enforceability of <u>redemption</u> <u>payments</u> and <u>purchase</u> <u>of</u> <u>shares</u>, not the satellite provisions of indemnification provisions of the Agreement and Note.

>hereof of its rights and remedies under the Note or under any other agreement securing, guaranteeing or otherwise pertaining to this Note…" (emphasis supplied)

It can hardly be disputed that the Trustee's Second Amended Complaint is a frontal attack upon the Arbores' security under the Note and the other operative agreements; it seeks to void, under certain fraudulent conveyance statutes, the Redemption Agreement and Note and any and all of the Arbore's rights including received payments, pre-petition under the Note.

## D

## THE TRAVELERS CASE

It is clear that BCL §513(a) cannot, and does not, operate statutorily to render unenforceable the Agreement, Note and other operative agreements where, as here, the Debtor's claimed insolvency is not accompanied by any payment or redemption made by it pursuant to its redemption or purchase of its own stock.

The Trustee, after having been introduced by the Defendants, to the unanimous decision of the Supreme Court, <u>Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.</u>, _____ U.S. _____ 127 S. Ct. 1199 (2007), now attempts to wiggle out of the Court's holding that there is no basis in the Bankruptcy Code for barring post-petition attorneys fees performed with respect to issues peculiar to Bankruptcy Law.

First, the Trustee, unsurprisingly points to Bankruptcy Code §506(b)[5] which only provides for the allowance of secured claims for post-petition attorneys' fees. This section was not addressed by <u>Travelers</u>, since no question was presented to it with respect to its applicability to unsecured claims. Thus, as the debtor claimed, in <u>In re QMECT, Inc.</u>, ("QMECT"), 368 B.R. 882, 885 (Bankr. N.D. Cal. 2007), Code Section 506(b) implicitly denies such fees to an

---

[5] Query as to whether the Debtor's petition, classifying Arbores claim as "secured" is a judicial admission binding the Trustee. <u>See</u> e.g., <u>In re Applin</u>, 108 B.R. 253, 257 (Bankr. E.D.Cal. 1989)

unsecured creditor. The Court, in QMECT, noted that §506(b) is entitled "Determination of Secured Status". Thus, that Court said that "the logical place for unsecureds would be Code §502(b). Ibid.

Section 502(b) provides, inter alia, that where an objection to an unsecured claim is made, the claim is allowable except to the extent that such claim falls into one of nine categories. The Trustee directs his objection to the allowance of the Arbore Defendants' claim for post-petition attorneys' fees by relying upon the first category; Code §502(b)(1). That subsection provides, inter alia, that a claim is not allowable "if such claim is unenforceable against the Debtor's property under any agreement or applicable law…" But, under the facts and circumstances here, the Arbore Defendants' claims for post-petition legal fees are not interdicted by applicable law, i.e., BCL §513(a).

Without an extended discourse on the interplay between §506(b) and §502(b)(1) of the Code, we concur with the Court's analysis in its decision in In re SNTL Corp., 380 B.R. 204, 218-222 (9th Cir. BAP 2007) its progeny and its ancestral decisions. See e.g. In re Smith, 2008 WL 185784 (Bankr. W.D. Mo. 2008). In particular, SNTL's reference at 218, n.16 to UMM v. Equitable Life Assurance Society of the U.S., 674 F.2d 134, 138 (2d Cir. 1982), although a Chapter XI case, is particularly persuasive. ("Neither the statute [Bankruptcy Code §506(b) nor its legislative history sheds any light on the status of an unsecured creditor's contractual claim for attorneys' fees.")

Since the pre-petition contracts between Poseidon and the Arbores are enforceable, under state law, the Arbores' claim for attorneys' fees, post-petition, set forth in its proof of claim in the case, related to issues peculiar to bankruptcy law, i.e. avoidance of fraudulent conveyances as set forth in the Trustee's Second Amended Complaint, should be allowed and sustained.

## CONCLUSION

For all of the reasons set forth here, the Trustee's motion to dismiss, under all the familiar requirements therefor,[6] is not sustainable and, if, arguendo, this Court deems the motion to be one for summary judgment, it is clear that the Defendants are entitled to summary judgment against the Trustee.

Accordingly, the Arbore Defendants' claim for post-petition attorneys' fees, with respect to the Trustee's adversary proceeding, as well as its fees expended herein, all pursuant to an enforceable pre-petition contract, with indemnification provisions, should be sustained and allowed.

The Trustee's instant motion is a blatant and unabashed ruse to obviate his responsibility and duty to prove insolvency in support of each and every allegation of fraudulent conveyance, set forth in his adversary complaint.

Dated: Garden City, New York
       May 30, 2008

JASPAN SCHLESINGER HOFFMAN LLP
*Attorneys for Arbore Defendants*
300 Garden City Plaza
Garden City, New York 11530
(516) 746-8000

By    s/Joel Lewittes
      JOEL LEWITTES (JL 6576)
      Of Counsel to the Firm

---

[6] e.g. "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint [here, the counterclaims] as true and draw all reasonable inferences in favor of plaintiff [here, the Arbores]. Raila v. U.S. 355 F.3d 118, 119 (2d Cir. 2004)." Furthermore, dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [it]…to relief". Id.

TO: U.S. TRUSTEE
Federal Courthouse
560 Federal Plaza
Central Islip, New York 11722
Attn: Stan Yang, Esq.

THALER GERTLER, LLP
90 Merrick Avenue
Suite 400
East Meadow, New York 11554