UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In Re:

POSEIDON POOL & SPA
RECREATIONAL, INC.,

                Debtor.                       **ORDER**
                                                                                                             08CV3418(ADS)
----------------------------------------------------------X
ANDREW M. THALER, Trustee,
Estate of POSEIDON POOL & SPA
RECREATIONAL, INC.

                Plaintiff-Appellee,

-against-

ESTATE OF VINCENT J. ARBORE, Deceased,
DIANE ARBORE, in her capacity as Executrix of
the Estate of Vincent J. Arbore, DIANE ARBORE,
ANN ARBORE, PETER ARBORE, JAYVIN ARBORE,
ALLISON ARBORE, MICHAEL ARBORE,
KATHERIN ARBORE, ALAN ARBORE,
JAMES ARBORE, ROSA DINICOLO, and
RITA CANNILLO,

                Defendants-Appellants.
----------------------------------------------------------X
**APPEARANCES:**

**JASPAN SCHLESINGER HOFFMAN LLP**
Attorneys for Defendants-Appellants
300 Garden City Plaza
Garden City, NY 11530
        By:    Joel Lewittes, Esq.
                  Hale Yazicioglu, Esq.
                  Linda S. Agnew, Esq., Of Counsel

**WEINBERG, GROSS & PERGAMENT, LLP**
Attorneys for Poseidon Pool & Spa Recreational, Inc.
400 Garden City Plaza, Suite 403
Garden City , NY 11530
      By:    Mark A. Pergament, Esq., Of Counsel

**THALER & GERTLER, LLP**
Attorneys for Plaintiff-Appellee,
Trustee Andrew M. Thaler
90 Merrick Avenue, Suit 400
East Meadow, NY 11554
      By:    Andrew M. Thaler, Esq.
               Michael A. Farina, Esq., Of Counsel

The appellants, Estate of Vincent J. Arbore, Diane Arbore as Executrix of the Estate of Vincent J. Arbore, Diane Arbore, Ann Arbore, Peter Arbore, Jyvin Arbore, Allison Arbore, Michael Arbore, Katherine Arbore, Alan Arbore, James Arbore, Rosa Dinicolo, and Rita Cannillo, (collectively, "the Estate") appeal from a decision of the bankruptcy court (Dorothy Eisenberg, J.), granting the Trustee Andrew M. Thaler's motion to dismiss two of the four counterclaims raised by the appellants in an adversary proceeding arising out of a Chapter 7 bankruptcy case.

## I.    BACKGROUND

A.    Factual History

The following facts are derived from the record on appeal and the parties' submissions. Up to and including May 24, 2002, Vincent J. Arbore ("Arbore") was an employee, officer and director of the Debtor, Poseidon Pool & Spa

2

Recreational, Inc., ("the Debtor").  On that date, the Debtor redeemed Arbore's ten shares of company stock for the purchase price of $450,000, $50,000 of which was paid by the Debtor to Arbore pursuant to a Redemption Agreement.  The Redemption Agreement was the result of a stipulation of settlement in an action entitled *Vincent J. Arbore v. Poseidon Pool & Spa Recreational, Inc.*, *et al*, No. 01-013666, then pending in the Supreme Court of New York, Nassau County.

In conjunction with the redemption of Arbore's shares, the Debtor executed a Note in the amount of $400,000, which provided that the Debtor would pay Arbore in installments of $6,500 per month at an interest rate of 10% per annum.  In addition, the Debtor, and the other shareholders of the Debtor, "Managers" Kathleen Gartner, Joseph Gartner, and Timothy Greco contemporaneously executed a Guarantee and Pledge Agreement.  Arbore died in September of 2002.  He and later his Estate received regular payments pursuant to the Redemption Agreement and the Note until August 2005.

The Redemption Agreement and Note each contained certain indemnification provisions.  In particular, paragraph 8.03(a) of the Redemption Provision provides that:

> The Company and each Manager will defend and indemnify Seller and hold him harmless from and against, any and all Losses suffered, incurred or sustained by Seller or to which he becomes subject, resulting from, arising out of, or relating to (i) any misrepresentation, breach of warranty or nonfulfillment, or

3

failure to perform, any covenant or agreement on the party of the Company or any Member contained in this Agreement, (ii) any breach of his or its representations, warranties, covenants, or agreements hereunder or (iii) arising from *Martinez vs. Poseidon Pools & Spa Recreational, Inc.*, Index Number 15707-01, Queens County, and the third-party action entitled *Poseidon Pool & Spa Recreational, Inc. vs. Vincent Arbore* (the "*Martinez Case*").

In addition, the paragraph 5 of the Note states:

> If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned [Timothy Greco, as president of Debtor] promises to pay all costs of collection, including reasonable attorney's fees, and all expenses in connection with the protection or realization of the collateral securing this Note or the enforcement of any guaranty hereof incurred by the holder hereof on account of such collection, such costs and expenses will include all costs, expenses and reasonable attorneys' fees incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway materially and adversely affects the exercise by the holder hereof of its rights and remedies under this Note or under any or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein.

Finally, the Guarantee provides:

3.01. The Pledgors, jointly and severally, hereby guarantee to the Secured Party and his successors and assigns, that if the Company fails to pay when due (whether at stated maturity, by acceleration or otherwise) any of the Secured Obligations, the Pledgors will promptly pay the same, without any demand or notice whatsoever, and that, in the case of any extension of time of payment or renewal of any of the Secured Obligations, the same will be promptly paid in full when due according to the terms of such extension

4

or renewal.

On or about October 7, 2005, the Debtor defaulted on the Note and at the same time filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On or about November 3, 2006, the Estate commenced an action against the guarantors of the Note in the Supreme Court of State of New York, Nassau County Index Number 06-018131, seeking payment of the balance due under the Note. Judgement was entered in favor of the Estate and against the guarantors, Karen Gartner, Joseph Gartner, and Timothy Greco in the amount of $285,542.72.

In addition, on or about September 1, 2005 Textron Financial Corporation ("Textron") commenced an action in the Supreme Court of the State of New York, Suffolk County ("the Textron Action/Litigation") against Timothy Greco, Christine Greco, the Estate of Vincent Arbore, Ann Arbore, and Joseph Gartner, claiming, among other things, breach of contract. Textron perfected a lien upon all of the Debtor's inventory financed by Textron.

The Textron complaint alleged that on or about November 11, 2000, Timothy and Christine Greco, Vincent Arbore and Ann Arbore each executed a document whereby they personally and unconditionally guaranteed the Debtor's obligations to Textron. The Arbores defended this action, asserting that their signatures on the Guarantees were forged. On June 7, 2006, the parties in the action entered a stipulation of dismissal with prejudice and without fees and costs

as to Christine Greco and the Arbores.

B.  Procedural History

On October 7, 2005, the Debtor filed a bankruptcy petition pursuant to Chapter 11 of the United States Bankruptcy Code, which was converted to a Chapter 7 proceeding on September 15, 2006, and the Trustee was appointed at that time. The Trustee commenced a fraudulent conveyance adversary proceeding seeking to avoid the Note and Redemption Agreement and certain payments made thereunder.

The Estate's Answer to the Second Amended Complaint in the adversary proceeding contains four counterclaims seeking affirmative recovery and/or set-off against the Debtor for attorney's fees and costs incurred by the Arbore Estate in the bankruptcy and adversary proceedings as well as in the Textron Action. In particular, the four counterclaims sought:

  (1)  Contractual indemnification for any and all damages, including attorney's fees, sustained by the Defendants as a result of the Textron Litigation;
  (2)  Common-law indemnification for any and all damages, including attorney's fees, sustained by the Defendants as a result of the Textron Litigation;
  (3)  Contractual indemnification for any and all damages, including attorney's fees, sustained by the Defendants as a result of any State or Federal Court Action, including this bankruptcy and adversary proceeding;
  (4)  Common-law indemnification for any and all damages, including attorney's fees, sustained by the Defendants as a result of any State or Federal Court Action, including this bankruptcy and adversary

proceeding.

The Trustee moved to dismiss the Estate's counterclaims. On January 15, March 11, May 15, and June 24, 2008, the bankruptcy court held hearings on the Trustee's motion.

Following the parties' submission of evidence outside of the pleadings, Judge Eisenberg treated the Trustee's motion to dismiss as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *In re Poseidon Pool & Spa Recreational, Inc.*, 391 B.R. 234, 240 (Bankr. E.D.N.Y. 2008).

With respect to the First and Third counterclaims for contractual indemnification, Judge Eisenberg determined that whether the Estate was entitled to recover rested on whether New York law would permit the Trustee to indemnify the Estate for any post-petition damages. *Id.* at 241. The court explained that pursuant to N.Y. Bus. Corp. Law ("BCL") § 513(a), "the shares of a corporation may not be purchased by the corporation, or if redeemable, convertible or exchangeable shares, may not be redeemed, converted or exchanged, in each case for or into cash, other property, indebtedness or other securities of the corporation (other than shares of the corporation and rights to acquire such shares) *if the corporation is then insolvent or would thereby be made insolvent. Shares may be purchased or redeemed only out of surplus.*" *Id.* at 241

(emphasis in original).

Thus, Judge Eisenberg concluded that "'payments *may not be made* in a situation of insolvency even though . . . the agreement itself may have been made when the corporation had a surplus sufficient to cover the entire purchase price, and title to the stock has been transferred.'" *Id.* (quoting *In re Flying Mailmen Service, Inc.*, 539 F.2d 866, 869 (2d Cir. 1976)). Judge Eisenberg explained that the rational behind the statute is "that the equities [in bankruptcy] favor general unsecured creditors over shareholders or former shareholders." *Poseidon*, 391 B.R. at 241 (citing *In re Dino & Arties Automatic Transmission Co., Inc.*, 68 B.R. 264, 268 (Bankr. S.D.N.Y. 1986)). "Where the debtor corporation is insolvent, any payment to a former shareholder would not come out of surplus and would adversely affect the interest of the debtor's general unsecured creditors." *Poseidon*, 391 B.R. at 241.

Further, Judge Eisenberg found that BCL § 513 focuses on the entire agreement with respect to enforceability. *Id.* at 242. The court explained that: "[n]one of the cases cited by either party supports a finding that despite the uneforceability of the agreement to purchase stock, the ancillary provisions in the agreement (such as indemnification clauses) remain viable or survive the unenforceability of the entire agreement." *Id.* at 242. Thus, Judge Eisenberg concluded that the Redemption Agreement, as well as the Note, and Guarantee

8

and Pledge Agreement, could not be enforced as to any payment obligation arising post-petition because the Redemption Agreement, along with its ancillary agreements, were null and void with respect to post-petition obligations.

Judge Eisenberg determined that the Estate's counterclaims arose after the bankruptcy petition was filed, explaining:

> With respect to first counterclaim, there is *no dispute* that the attorney's fees and costs the Defendant incurred in defending the Textron Action was commenced and the Defendants filed their Answer to the Textron Action during the post-petition period. Similarly, it is undisputed and clear that any claim for attorney's fees or costs relating to proceedings before this court arose post-petition and the Defendants have not asserted any claim for attorneys' fees or costs with respect to any other specific proceeding in support of their third counter-claim.

*Id.* at 245. Accordingly, Judge Eisenberg found that because the attorneys' fees and costs that were the subjects of the Estate's first and third counterclaims all arose post-petition, these counterclaims must fail.

On appeal, the Estate contends that the bankruptcy court improperly determined that the two claims arose post-petition. The Estate argues that these two claims were actually pre-petition contingent, unmatured claims. The Estate notes that contingent claims are allowable if they arise from some future event that was within the actual or personal contemplation of the parties at the time of creation of the original relationship. Further, the Estate reasons that these claims were in the contemplation of the parties at the time of the execution of the

9

Redemption Agreement because of the "uniformly held" rule that a right to payment based on a written indemnification contract arises at the point in time that the indemnification agreement was executed.

## II. DISCUSSION

A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under the "clearly erroneous" standard, *see* Fed. R. Bankr. P. 8013, while its conclusions of law are reviewed under the *de novo* standard. *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir. 2001); *In re Arochem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999) (holding that "we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law *de novo*") (citation omitted); *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998) (same) (citations omitted); *see also In re Porges*, 44 F.3d 159, 162 (2d Cir. 1995) (same) (citations omitted).

"On appeal, a district court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" *Eton Centers, Co. v. McNally (In re McNally)*, No. 02CV0085, 2003 U.S. Dist. LEXIS 25856, at *3 (S.D.N.Y. June 2, 2003) (citing Fed. R. Bankr. P. 8013).

Initially, the Court finds that the bankruptcy court's ruling that redemption agreements (and ancillary agreements) that were valid and enforceable at

inception became unenforceable upon insolvency is clearly correct under the applicable New York law. *See In re Flying Mailmen Servs., Inc.*, 539 F.2d 866, 869 (2d Cir. 1976) (affirming unenforceability of security interest granted in conjunction with a repurchase agreement even though the agreement may have been made when the corporation had a surplus sufficient to cover the entire purchase price); *In re Dino & Artie's Automatic Trans. Co.*, 68 B.R. 264, 269 (Bankr. S.D.N.Y. 1986) ("Because the underlying obligation is [now] unenforceable, it follows that the mortgage, which was given to secure the repurchase obligation must also fall with it."). The Estate apparently concedes this point in its reply brief on the present appeal. (*See* Appellant's Reply Brief, Oct. 6, 2008, at p.2 ("[T]he insolvency of the Debtor, when it filed its Chapter 11 petition, triggers the application of BCL §513(a) only with respect to post-petition payments or distributions.")).

The Estate's present position, however, centers on its contention that the contractual indemnification claims are pre-petition contingent, unmatured claims rather than post-petition (post-insolvency) claims. The record shows that the Estate did not raise this theory before the bankruptcy court, resulting in Judge Eisenberg's conclusion that it was "undisputed" that the Estate's contractual indemnification claims arose "post-petition." (*See* Arbore Defendants' Memorandum in Opposition to Trustee's Motion to Dismiss, Feb 26, 2008, at pg.

11

11 ("[U]nder the facts and circumstances here, the Arbore Defendants' claims for *post-petition* legal fees are not interdicted by applicable law, i.e. BCL § 513(a)." and "Since the pre-petition contracts between Poseidon and the Arbores are enforceable, under state law, the Arbores' claim for attorneys' fees, *post-petition*, set forth in its proof of claim in the case, related to issues peculiar to bankruptcy law . . . , should be allowed and sustained." (emphasis added))).

Although the Estate arguably waived this argument by failing to present it to the bankruptcy court, for the following reasons the Court finds that equity requires that the Estate be given an opportunity to pursue the issue. *See Castleman v. Liquidating Trustee*, No. 06CV1077, 2007 WL 2492792 at *10 (N.D.N.Y. Aug. 28, 2007) (finding argument of excusable neglect for failure to timely file proofs of claim waived where it was not raised before the bankruptcy court). *But see In re Hilsen*, 119 B.R. 435, 439 (S.D.N.Y. 1990) ("A district court sitting in a bankruptcy appeal has the power to consider any issue presented by the record on appeal, even if the issue was not presented to the bankruptcy court."); *In re W.T. Grant Co.*, 20 B.R. 186, 189 n.4 (S.D.N.Y. 1982) (allowing legal argument to be raised for the first time on appeal where opponent did not argue waiver for failure to raise before the bankruptcy court)**.**

The Estate's position that its indemnification claims are pre-petition contingent claims, rather than post-petition claims appears to have some

12

grounding in the case law. *See In re R.H. Macy & Co.*, 67 Fed. Appx. 30, 32 (2d Cir. 2003) (explaining that "a claim will be deemed pre-petition when it arises out of a relationship recognized by contract if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation" (internal quotations and citations omitted)); *In re Manville Forest Products Corp.*, 209 F.3d 125, 129 (2d Cir. 2000) ("Under contract law, a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed."); *In re Agway, Inc.*, No. 02CV6572, 2008 WL 2827439, at *6 (Bankr. N.D.N.Y. July 18, 2008). Further, the Trustee now seems to acknowledge the pre-petition contingent nature of the Estate's counterclaims. (*See* Appellee's Brief, Sept. 25, 2008, at p.14). However, as this issue was not presented to the bankruptcy court on the motion, the Court will remand this matter to the bankruptcy court for consideration of whether the Estate's counterclaims for contractual indemnification are pre-petition contingent claims.

In addition, if the bankruptcy court finds that the Estate's position is correct, there are several additional items that must be determined. First, it must be determined what, if any, legal effect a change in status from post-petition to pre-petition but contingent has on the Estate's first and third counterclaims. In particular, the bankruptcy court must have the opportunity to decide whether pre-

petition contingent claims survive the operation of BCL § 513 even where payment on those claims is to be made after insolvency has been established. Second, if these counterclaims do survive the operation of BCL § 513, it must be determined whether the indemnification provisions are broad enough to cover expenses incurred in connection with the Textron Action.

### III.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the matter is remanded to the bankruptcy court for a determination of (1) whether the Estate's first and third counterclaims are pre-petition contingent claims; (2) what effect, if any, that finding has on the viability of those counterclaims under BCL § 513; and (3) whether the indemnification provisions in issue are sufficiently broad to permit a claim for recovery in connection with the Textron Action; and it is further

**ORDERED**, that the Clerk of the Court is directed to terminate this appeal (08CV3418).

**SO ORDERED**.
Dated: Central Islip, New York
July 6, 2009

  */s/ Arthur D. Spatt*  
ARTHUR D. SPATT
United States District Judge